# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL W. HUDSON,<br><br>             Plaintiff,<br><br>      v.<br><br>TERRY BRIAN, et al.,<br><br>             Defendants.<br>_____/ | CASE NO. 1:08-cv-00249-SMS PC<br><br>ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE<br><br>(Doc. 1) |

### Screening Order

Plaintiff Michael W. Hudson is a state prisoner, proceeding *pro se* and in *forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on February 20, 2008. On March 7, 2008, Plaintiff consented to jurisdiction of a U.S. Magistrate Judge.

**I.      Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the Court shall dismiss the case at any time if the Court determines that . . . the action or

1

1  appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. §
2  1915(e)(2)(B)(ii).

3  "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited
4  exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534
5  U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a
6  short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R.
7  Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's
8  claim is and the grounds upon which it rests." Swierkiewicz, *supra*, 534 U.S. at 512. A court
9  may dismiss a complaint only if it is clear that no relief could be granted under any set of facts
10 that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a
11 plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support
12 the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and
13 unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003), *quoting*
14 Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); *see also* Austin v. Terhune, 367 F.3d 1167, 1171
15 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the
16 claim . . . .'"), *quoting* Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001). However, "the
17 liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v.
18 Williams, 490 U.S. 319, 330 n. 9 (1989). "[A] liberal interpretation of a civil rights complaint
19 may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l
20 Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997), *quoting* Ivey v. Bd. of Regents, 673
21 F.2d 266, 268 (9th Cir. 1982).

22 **II.    Plaintiff's Claim**
23        **A.    Summary of Complaint**
24        Prior to July 2, 2007, Plaintiff, then an inmate at Kern Valley State Prison ("KVSP"),
25 filed a Form 602 staff complaint against the Defendants, Correctional Officers Brian and Volker,
26 because his breakfast was always delivered cold.[1] Before serving breakfast on July 2, Defendant
27
28
   [1] The complaint implies that the breakfasts included food intended to be heated before consumption and served warm.

2

Brian confronted Plaintiff about the complaint and called Plaintiff "a liar." After Plaintiff retreated from a brief verbal exchange by sitting in the back of his cell, Brian continued a stream of verbal abuse and name-calling, ending in Brian's promising that he would write-up Plaintiff, who would end up in the hole.

Shortly thereafter, Brian delivered a warm breakfast tray to Plaintiff. When the time came for tray pick-up, Plaintiff left his tray on the flat part of the food slot and turned to walk away. The tray fell to the cell floor. Plaintiff turned back to see Brian grinning at him. Plaintiff picked up the refuse from the floor and replaced it on the food slot. Brian told Plaintiff, "I gotcha! You assaulted me!" explaining that Plaintiff had injured Brian by pushing to food tray into Brian's hand so hard as to injure Brian.

Brian looked at the control booth and shouted, "Did you see that?" Defendant Volker was not at his post. When Volker returned, Brian again shouted,"Did you see that?" Volker replied that he had. Brian proceeded to file a Rules Violation Report charging Plaintiff with battery on a peace officer. Plaintiff was relocated to administrative segregation ("AD SEG") pending his disciplinary hearing.

Plaintiff appeared before the Institution Classification Committee on July 5, 2007, and told his version of the July 2 incident. Thereafter, the committee determined that the charge of battery on a peace officer was not supported by the body of the complaint. Plaintiff was released to the facility "A" yard but was assigned a lower group status and lost his job assignment and privileges. Plaintiff was placed on a job waiting list.

Nonetheless, on July 10, 2007, Plaintiff received a serious rule violation report describing the July 2, 2007, incident, scheduling a disciplinary hearing, and referring the matter to the Kern County District Attorney for possible felony prosecution. Following an August 9, 2007, disciplinary hearing, Plaintiff was again found not guilty.

**B.     Retaliation**

Plaintiff contends that, by filing a false disciplinary report, the Defendants violated his due process rights in retaliation for his filing a Form 602 against them. He alleges a laundry list of negative consequences flowing from the false report, including (1) Plaintiff's transfer to the

3

administrative segregation unit ("AD SEG"); (2) reduction of Plaintiff's prison classification, (3) Plaintiff's loss of his prison job and associated earnings; (4) deprivation of personal property; and (5) possible future repercussions in future parole hearings.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). *See also* Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Plaintiff mischaracterizes the consequences of Defendants' action as due process violations. The constitutional violation at the heart of a retaliation claim is the violation of a prisoner's First Amendment rights, since the defendant's actions respond to the prisoner's exercise of those rights and seek to discourage the prisoner from the future exercise of his First Amendment rights. Pratt, *supra*, 65 F.3d at 806. As a result, even if the retaliatory action does not violate a constitutionally protected liberty interest, as would be required to establish a valid due process claim (*see* ¶ C, *infra*), the action may state a claim in retaliation. Ibid. (transferring the plaintiff to another institution would not constitute a due process violation but could support a finding of retaliation). *See also* Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997), *cert. denied sub nom.* Pearson v. Hines, 524 U.S. 936 (1998).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

**Adverse Action Against Plaintiff.** Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); *see also* Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007); Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005), *cert. denied*, 549 U.S. 809 (2006); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005);

4

Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigating in court and filing inmate grievances are protected activities, and it is impermissible for prison officials to retaliate against inmates for engaging in these activities.

Defendants filed a false disciplinary report against Plaintiff. Retaliatory issuance of a false rules violation constitutes adverse action. Hines, *supra*, 108 F.3d at 267 (retaliatory issuance of false rules violation and subsequent finding of guilt).

**Because of Protected Conduct.** "Prisoners' claims of retaliation must be examined with 'skepticism and particular care," because they are '[p]rone to abuse since prisoners can claim retaliation for every decision they dislike,'" Gill, *supra*, 389 F.3d at 380 (*citations and some quotation marks omitted).* A plaintiff must demonstrate "a causal connection between the protected speech and the adverse action." Id. at 380. Plaintiff does so here, recounting that, in the verbal abuse leading to the "tray incident," Brian himself tied his abuse to Plaintiff's having filed a grievance about the Defendants' serving cold breakfasts when they shared the second watch.

**Chilling Plaintiff's Exercise of First Amendment Rights.** The 9th Circuit does not require litigants to prove a total chilling of his First Amendment rights to perfect a retaliation claim. Rhodes, *supra*, 408 F.3d at 568. Retaliatory actions against prisoners who have exercised their First Amendment rights to file prison grievances or federal civil rights suits necessarily undermine First Amendment protections. Id. at 567. To establish his retaliation claim, a prisoner need not demonstrate that the defendant actually inhibited or suppressed his speech. Id. at 569. This prong requires only that the defendant's actions "would chill or silence a person of ordinary firmness from future First Amendment activities." Id. at 568-69, *quoting* Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999) (*citation and quotation marks omitted.)* Allegations of harm resulting from a defendant's retaliatory act are generally sufficient to satisfy this prong, since "harm that is more than minimal will almost always have a chilling effect." Rhodes, *supra*, 408 F.3d at 567 n. 11. Although Plaintiff does not articulate "a chilling effect," the complaint adequately sets forth the false report's numerous adverse consequences.

///

**Failure to Advance Legitimate Correctional Goals.**  Federal courts must defer to the correctional system's need to maintain order, discipline and control.  Wolff v. MacDonnell, 418 U.S. 539, 558-562 (1974).   Plaintiff bears the burden of proving the absence of legitimate correctional goals in the Defendants' false disciplinary report.  Pratt, *supra*, 65 F.3d at 806.  Establishing that a prison official's actions against the plaintiff were retaliatory and arbitrary and capricious is sufficient to allege that the retaliatory acts lacked a legitimate correctional goal and were a reasonable exercise of prison authority.  Rizzo, *supra*, 778 F.2d at 532.  And even if the defendant's retaliatory action had a valid penological purpose in another context, a valid purpose will not be found if the action was used as a pretext for punishing the prisoner.   Bruce*, supra,* 351 F.3d at 1289.  Even though Plaintiff does not explicitly address whether Defendants' actions had a legitimate correctional goal, his description of being "set up" for a charge of battery against a peace officer is sufficient to satisfy this element of retaliation.

### C.     Due Process Violations

As noted in the examination of Plaintiff's claim of retaliation, Plaintiff complains that Defendants' retaliatory violation of his due process rights resulted in (1) reduction of Plaintiff's classification; (2) relocation of Plaintiff from the general population to AD SEG; (3) loss of his existing prison job and its associated pay, as well as limitations of his future job prospects; (4) possible repercussions in future parole hearings, and (5) deprivation of personal property that was lost or misplaced when Plaintiff was transferred to AD SEG.  Whether Plaintiff intends to claim a due process violation in addition to his retaliation claim is not clear from the complaint but does not matter.  None of the due process violations that Plaintiff claims are cognizable.

"The touchstone of due process is protection of the individual against arbitrary action of government."  Wolff, 418 U.S. at 558, *quoting* Dent v. West Virginia, 129 U.S. 114, 123 (1889).  The Due Process Clause protects against the deprivation of liberty without due process of law.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Wolff, *supra*, 418 U.S. at 556.  To invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Wilkinson, *supra*, 545 U.S. at 221.  Liberty interests may arise from the Due Process Clause itself, or from an expectation or interest created by prison

regulations. Ibid. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Ibid. The existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Such liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir.), *cert. denied*, ___ U.S. ___, 128 S.Ct. 396 (2007).

### 1. Change of Classification

As a result of the tray incident, Plaintiff's classification level was reduced, leading to a loss of privileges. Prisoners have no liberty interest in their prison classification. *See* Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); Myron, *supra*, 476 F.3d at 718 ; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998); Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987). A state or federal inmate has no liberty interest in being housed in a particular custody level or in a particular unit of a correctional institution. Olim v. Wakinekona, 461 U.S. 238 (1983).

### 2. Relocation to AD SEG

Because assignment to AD SEG does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," a prisoner has no liberty interest in remaining in the general prison population. *See* Sandin, *supra*, 515 U.S. at 481-86; Hewitt v. Helms, 459 U.S. 460, 468 (1983). Transferring an inmate to less desirable, relatively more restrictive, or smaller quarters for non-punitive reasons is a frequent occurrence in prison systems, necessitated by such legitimate penological objectives as protecting one or more inmates, defusing volatile interactions, separating disruptive or predatory inmates from the general population, or preparing an inmate for re-classification or transfer. Id. at 468; Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.), *rehearing denied*, 75 F.3d 448 (9th Cir.), *cert. denied*, 516 U.S. 916 (1995). In particular, "the isolation of a prisoner pending investigation of misconduct charges against him serves important institutional interests relating to the insulating of potential witnesses from coercion or harm." Hewitt, *supra*, 459 U.S. at 473.

### 3. Loss of Existing Job, Associated Wages, and Future Job Prospects

Prisoners do not have a constitutional right to prison employment. Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997); Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987); Bauman v. Arizona Dep't of Corrections, 754 F.2d 841, 846 (9th Cir. 1985). Having no right to a prison job, an inmate has no right to the wages from a prison job. Hrbek v. Farrier, 787 F.2d 414, 416 (8th Cir. 1986).

### 4. Potential Parole Impact

Parole determinations rest on many factors. The chance that an unfounded disciplinary report will adversely affect the outcome of an as-not-yet-scheduled parole hearing is too remote to trigger the procedural guarantees of the Due Process clause. Sandin, *supra*, 515 U.S. at 487. *See also* Meachum v. Fano, 427 U.S. 215, 229 n. 8 (1976).

### 5. Deprivation of Personal Property

Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). The Due Process Clause protects prisoners from being deprived of their property without due process of law. Wolff, *supra*, 418 U.S. at 556. An authorized, intentional deprivation of property is actionable under the Due Process Clause. Hudson v. Palmer, 468 U.S. 517, 532 n.13 (1984); Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). In contrast, "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, *supra*, 486 U.S. at 533. Because Plaintiff has remedies available under California law, he may not pursue a § 1983 claim based on the unauthorized loss of his personal property.

## III. Conclusion and Order

Plaintiff's complaint states a retaliation claim under the First Amendment against Defendants but fails to establish any due process violations. This Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified in this order.

Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on his retaliation claim, Plaintiff may so notify the Court in writing.  The Court will then forward to Plaintiff two summonses and two USM-285 forms for completion and return.  Upon receipt of the completed forms, the Court will direct the United States Marshal to initiate service of process on Defendants.

If Plaintiff elects to file an amended complaint, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997), aff'd, 525 U.S. 299 (1999); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, supra, 814 F.2d at 567; accord Forsyth, supra, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint fails to state a cause of action in due process;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed against Defendants only on his retaliation claim;

///

     4.     If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a Court order.

IT IS SO ORDERED.

**Dated:**   **July 17, 2009**                               /s/ Sandra M. Snyder
                                                          UNITED STATES MAGISTRATE JUDGE