IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HUDSON,<br><br>    Plaintiff,<br><br>    vs.<br><br>TERRY BRIAN, et al.,<br><br>    Defendants.<br>_____/ | Case No. 1:08-cv-00249 AWI JLT (PC)<br><br>FINDINGS AND RECOMMENDATIONS DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 33) |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's First Amendment retaliation claims against Defendants Brian and Volker. Now pending before the Court is Defendants' motion for summary judgment filed December 1, 2010. Plaintiff has filed an opposition to the motion, and Defendants have filed a reply. For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be **DENIED**.

**I.      BACKGROUND**

    **A.      Factual Background**

Plaintiff alleges the following events took place at Kern Valley State Prison ("KVSP"). On July 2, 2007, prior to breakfast, Defendant Brian approached Plaintiff's cell and called Plaintiff a liar for filing a grievance wherein Plaintiff accused Defendant Brian of serving cold breakfasts. (Doc. 1 at 3.) Defendant Brian verbally harassed Plaintiff regarding the matter over the next ten to fifteen minutes.

1  (Id. at 3-4.)  At one point, Defendant Brian even threatened to file a CDC-115 (rules violation report)
2  against Plaintiff and have Plaintiff sent to "the hole" (segregated housing).  (Id. at 4.)

3  Defendant Brian then left, only to return shortly thereafter with a warm breakfast for Plaintiff.
4  (Id.)  Plaintiff accepted the meal tray.  (Id.)  Ten minutes later, Defendant Brian returned to Plaintiff's
5  cell in order to retrieve the tray.  (Id.)  Plaintiff placed the tray in the cell door slot and walked away.
6  (Id. at 5.)  When Plaintiff heard the tray fall to the floor, he picked-up the tray and returned it to the cell
7  door slot.  (Id.)  At that point, Defendant Brian said, "I gotcha.  You assaulted me!"  (Id.)  Defendant
8  Brian looked over to the control booth and asked, "Did you see that?"  (Id.)  A few seconds later, when
9  Defendant Volker returned to his post in the control booth, Defendant Brian repeated his question, to
10 which Defendant Volker replied, "Yes, I did."  (Id.)

11 As a result of the incident, Defendants Brian and Volker submitted disciplinary reports against
12 Plaintiff for committing battery on a peace officer.  (Id.)  On August 9, 2007, a disciplinary hearing was
13 held on the matter, and Plaintiff was found not guilty of the offense.  (Id. at 7, Ex. D.)  Nevertheless,
14 Plaintiff claims that he suffered several repercussions due to the issuance of the rules violation report,
15 including confinement in administrative segregation and a loss of personal property during his transfer
16 to administrative segregation.  (Id. at 8-9.)

17 **B.     Procedural History**

18 Plaintiff filed his complaint and initiated this action on February 20, 2008.  (Doc. 1.)  By order
19 filed July 17, 2009, the Court screened the complaint pursuant to 28 U.S.C. § 1915A and found that it
20 stated cognizable retaliation claims under the First Amendment but failed to establish any due process
21 claims regarding the deprivation of personal property.  (Doc. 10.)  Plaintiff was instructed to file either
22 an amended complaint correcting the deficiencies identified by the Court regarding his due process
23 claims or notify the Court in writing of his willingness to proceed on his cognizable retaliation claims.
24 (Id. at 8-9.)  On July 31, 2009, Plaintiff notified the Court that he wished to proceed only on his
25 retaliation claims.  (Doc. 11.)

26 On January 21, 2010, Defendants Brian and Volker filed their answer to the complaint.  (Doc.
27 18.)  Discovery ensued thereafter.  (Doc. 19.)  Defendant Volker then filed a timely motion to dismiss
28 on March 22, 2010, arguing therein that Plaintiff failed to exhaust his administrative remedies.  (Doc.

2

23.) On September 27, 2010, the Court issued findings and recommendations recommending that the motion to dismiss be denied. (Doc. 32.) The Court found that although Plaintiff did not specifically identify Defendant Volker in his grievance, Plaintiff sufficiently described the incident giving rise to this action in the grievance and properly exhausted the grievance pursuant to the prison's regulations and the Prison Litigation Reform Act. (Id. at 2-4.) On December 3, 2010, the assigned district judge adopted the findings and recommendations in full. (Doc. 34.)

On December 1, 2010, Defendants filed the instant motion for summary judgment. (Doc. 33.) Plaintiff filed a timely opposition to the motion on January 19, 2011. (Docs. 36-38.) Two days later, on January 21, 2011, Defendants filed a reply. (Doc. 39.)

## II.   SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v.

1 Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257 (1986)) (emphasis in the original). Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment. Stefanchik, 559 F.3d at 929. Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

## III. DISCUSSION

Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate penological purpose. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting Rhodes, 408 F.3d at 567-68).

Defendants contend that they are entitled to summary judgment because (1) there is no evidence that Plaintiff engaged in conduct protected by the First Amendment; and (2) there is no evidence that Defendants Brian and Volker initiated disciplinary action against Plaintiff in order to retaliate against him. In other words, Defendants contend that there is no genuine issue of material fact precluding summary judgment in their favor with respect to element two (causation) and element three (protected conduct) of Plaintiff's First Amendment retaliation claims.

4

In support of their argument, Defendants have produced the declaration of Dina Tarnoff, the appeals coordinator and custodian of records for inmate appeals at KVSP. (Doc. 33-1 at 5.) Therein, Dina Tarnoff declares that a review of Plaintiff's inmate appeal file shows that Plaintiff never filed a grievance prior to July 2, 2007 concerning Defendants serving Plaintiff cold breakfasts or meals. (Id. at ¶ 3.) According to Dina Tarnoff, the only grievance filed by Plaintiff against Defendants Brian or Volker was Appeal Log No. 07-02067, filed on September 9, 2007, wherein Plaintiff complained that Defendants retaliated against him on July 2, 2007. (Id.) Defendants therefore contend that Plaintiff's inmate appeal file demonstrates that Plaintiff did not engage in protected conduct (filing grievances against Defendants) *prior* to the alleged incident of retaliation.

With respect to causation, Defendants Brian and Volker declare that even if Plaintiff did file a grievance against them regarding the service of cold meals prior to July 2, 2007, they had no knowledge of the grievance. (Doc. 33-3 at ¶ 4; Doc. 33-7 at ¶ 4.) Nor has either defendant ever heard Plaintiff complain that he was being served cold food. (Doc. 33-3 at ¶ 5; Doc. 33-7 at ¶ 5.) Thus, because they were unaware of Plaintiff's complaints, Defendants argue that they never threatened Plaintiff or ever sought to retaliate against him for filing grievances. (Doc. 33-3 at ¶ 6-7; Doc. 33-7 at ¶ 6-7.)

According to Defendants, the reason why they filed a disciplinary action against Plaintiff was because on July 2, 2007, Plaintiff threw his meal tray and struck Defendant Brian on his right hand. (Doc. 33-7 at ¶ 2; see Doc. 33-3 at ¶ 2.) Defendants assert that prison officials are required to submit Crime/Incident Reports whenever a staff member is assaulted by a prisoner, no matter how minor the incident. (Doc. 33-7 at ¶ 3; Doc. 33-3 at ¶ 3.) Therefore, Defendants argue that their actions were not driven by retaliatory intent. Rather, Defendants contend that their actions were fully consistent with prison policy and regulations.

Defendants' contentions and version of the facts, however, are disputed by the allegations set forth in Plaintiff's verified complaint and Plaintiff's declaration filed in connection with his opposition to the instant motion for summary judgment. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (because the plaintiff is proceeding pro se, the court must consider as evidence in his opposition to summary judgment all of plaintiff's contentions offered in motions and pleadings where (1) plaintiff's contentions are based on personal knowledge and set forth facts that would be admissible in evidence;

5

and (2) plaintiff attested under penalty of perjury that the contents of his motions and pleadings are true and correct). First, Plaintiff asserts that filed a grievance against Defendants Brian and Volker regarding the service of cold breakfasts. (Doc. 37 at ¶ 3.) Plaintiff declares that on June 30, 2007, he observed a fellow inmate hand his grievance regarding cold food directly to Defendant Volker in the control booth. (Id. at ¶ 4.) Plaintiff explains that he was unable to personally deliver his grievance to Defendant Volker because black inmates, such as himself, were under lockdown at the time.[1] (Id.)

Second, Plaintiff asserts that Defendants had knowledge of the grievance. Plaintiff avers that not only did Defendant Volker physically accept the grievance, but minutes later, Defendant Volker called Plaintiff a liar, thereby implying that Defendant Volker read the contents of the grievance. (Id. at ¶ 6.) As to Defendant Brian, Plaintiff alleges that two days later, on July 2, 2007, Defendant Brian approached Plaintiff's cell and also called him a liar for filing the grievance regarding cold food. (Id. at ¶ 7; Doc. 1 at 3.) Plaintiff alleges further that Defendant Brian verbally harassed him regarding the grievance for almost fifteen minutes that day. (Doc. 1 at 3-4.)

Third, Plaintiff presents evidence sufficient in demonstrating causation. "To show the presence of th[is] element on a motion for summary judgment, [the plaintiff] need only 'put forth evidence of retaliatory motive, that, taken in light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent[.]'" Brodheim, 584 F.3d at 1271 (quoting Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)). Suspect statements combined with suspect timing can properly be considered as circumstantial evidence of retaliatory intent. Bruce, 351 F.3d at 1289; Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Here, Plaintiff provides evidence of just that.

According to Plaintiff, both of the defendants called him a liar and expressed hostility toward Plaintiff for filing the June 30, 2007 grievance. Plaintiff asserts that at one point, Defendant Brian explicitly threatened to send Plaintiff to "the hole" for lying in the grievance. Plaintiff declares that shortly thereafter, Defendants retaliated against him by filing false disciplinary charges against him.

---

[1] Defendants argue in their reply that the "glaring deficiency with plaintiff's claim is his failure to produce the 602 [grievance] which he bases his 'protected conduct.'" (Doc. 39 at 2.) Although a copy of the grievance would certainly aid Plaintiff in *conclusively* establishing that he did, in fact, file a grievance on June 30, 2010, it is not Plaintiff's burden as the nonmoving party to conclusively prove his case. On Defendants' motion for summary judgment, Plaintiff must simply provide evidence demonstrating the existence of a genuine issue of material fact. Plaintiff's declaration that he submitted a grievance against Defendants regarding cold food on June 30, 2010 is sufficient in this regard.

6

1  Plaintiff emphasizes that the retaliatory incident occurred mere minutes after Defendant Brian had
2  finished berating Plaintiff over the contents of the June 30, 2007 grievance. (Doc. 1 at 3-5.)

3       Accordingly, accepting Plaintiff's evidence as true and drawing all inferences from the parties'
4  evidence in favor of Plaintiff as the nonmoving party, the Court finds that there are genuine issues of
5  material fact precluding summary judgment in Defendants' favor. In particular, questions of material
6  fact remain as to (1) whether Plaintiff filed a grievance on June 30, 2007 against Defendants regarding
7  the service of cold meals; (2) whether Defendants had knowledge of the grievance; and (3) whether
8  retaliation was the motivating factor behind Defendants' actions. These questions cannot be resolved
9  on this record on a motion for summary judgment and must be submitted to a trier of fact. See Nelson
10 v. City of Davis, 571 F.3d 924, 929 (9th Cir. 2009) ("A judge must not grant summary judgment based
11 on his determination that one set of facts is more believable than another.").

12 **IV.    PLAINTIFF'S FAILURE TO FOLLOW LOCAL RULE 260(b) IS NOT DISPOSITIVE**

13      Local Rule 260(b) requires, "Any party opposing a motion for summary judgment or summary
14 adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those
15 facts that are undisputed and deny those that are disputed, including with each denial a citation to the
16 particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other
17 document relied upon in support of that denial." In L. Qiy Am Pogue v. Woodford, 2009 U.S. Dist.
18 LEXIS 75943at *14-18 (E.D. Cal. Aug. 25, 2009), the Court observed,

19     In making their motion for summary judgment, defendants correctly, and pursuant to the
    rules of this court, set forth a separate statement of undisputed facts. Eastern District
20     Local Rule 56-260. Plaintiff is supposed to counter this with a fact-by-fact agreement,
    agreement in part and/or a showing by reference of where the court might find a disputed
21     fact. **The reasons for the court rules are obvious -- the adjudicator should be able
    to look in one place to see if a party is disputing a fact set forth by the moving party**
22     **as undisputed.**

23 (Emphasis added.) However, as here, in Richardson v. Runnels, 594 F.3d 666, 670 (9th Cir. 2010), the
24 pro se prisoner-plaintiff failed to respond to the defendants' separate statement of undisputed facts.
25 However, this deficiency was of little moment to the Richardson Court who affirmed in part and
26 reversed in part the grant of summary judgment by the District Court. Therefore, though the Court does
27 not condone Plaintiff's failure to comply with Local Rule 260(b), given the relatively limited number
28 of factual issues raised in this litigation, the Court does not find that granting the motion based upon

Plaintiff's deficiency is warranted.

## V.    DEFENDANTS' OBJECTIONS TO PLAINTIFF'S DECLARATION

### A.    Objection to paragraph 3

Defendants object that Plaintiff's sworn assertion that he submitted a grievance before July 2, 2007 "is not the best evidence" and seem to claim that Plaintiff was obligated to produce an actual copy of the grievance, rather than merely testify about it. Notably, there is no indication from Defendants that Plaintiff retained a copy of the grievance or was provided a copy. To the contrary, Plaintiff's evidence demonstrates that Defendants *refused* to return him a copy of the grievance. (Doc. 37 at 2 ¶ 5)

It appears that Defendants rely upon Federal Rules of Evidence Rule 1002[2] which provides, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." However, the gist of Plaintiff's evidence is not related to proving that Plaintiff filed a grievance related to cold food. Whether the grievance related to cold food or some other topic is irrelevant to the litigation. Instead, the purpose of the evidence is to demonstrate that he filed a grievance at all. Thus, Rule 1002 does not apply because Plaintiff does not seek to prove the content of the writing. The objection is recommended to be **OVERRULED.**

### B.    Objection to paragraph 5

Defendants seem to object to the statement in which Plaintiff surmises that his grievance was destroyed or misplaced by Defendants.[3] The Court agrees that this statement is not supported by adequate foundation and, as a result, is speculative. Therefore, these objections are recommended to be **GRANTED.**

On the other hand, it appears that Defendants contend again, according to Rule 1002, that Plaintiff was obligated to provide a copy of the grievance. For the same reason set forth above, this objection is recommended to be **OVERRULED.**

---

[2] Defendants fail to cite to any legal authority to support their objections nor do they explain the bases for their objections. Thus, the Court is forced to guess at their meaning.

[3] Once again, Defendants' failure to specify the objectionable material has required to the Court to guess at which portion of the paragraph that they believe is at issue. This failure is sufficient to deem the objections waived.

|   |   |   |
|---|---|---|
| 1 | C. | Objection to paragraph 6 |

Defendants contend that this paragraph is hearsay. Assuming that they are referring to Plaintiff's statement that Defendant Volker called him a "liar," this is a statement by a party-opponent and, as such, is an exception to the hearsay rule. Fed. Rules Evid. 801(d)(2). The objection is recommended to be **OVERRULED.**

    D.    Objection to paragraph 7

Defendants contend that this paragraph is hearsay. Assuming that they are referring to Plaintiff's statement that Defendant Brian said to him, "You are a liar" and threatened to spray Plaintiff with pepper spray, these statements are spoken by a party-opponent and, as such, is an exception to the hearsay rule. Fed. Rules Evid. 801(d)(2). The objection is recommended to be **OVERRULED.**

    E.    Objection to paragraph 8

Defendants contend that this paragraph is hearsay. Assuming that they are referring to Plaintiff's statement that Defendant Brian said to Officer Bettencourt, "Don't. I will handle this," this statement was spoken by a party-opponent and, as such, is an exception to the hearsay rule. Fed. Rules Evid. 801(d)(2). The objection is recommended to be **OVERRULED.**

    F.    Objection to paragraph 9

Defendants contend that this paragraph is hearsay. They do not identify which of the statements contained in the paragraph are at issue. Given the number of statements contained in this paragraph, the Court refuses to speculate as to which, or all, of the statements are at issue. Thus, the objection is recommended to be **OVERRULED.**

    G.    Objection to paragraph 11

Defendants contend that this paragraph is speculative apparently because Plaintiff claims to have knowledge that Defendants knew of his grievance. However, earlier in the declaration, Plaintiff reports that he gave the grievance to Volker and that both defendants made comments to him related to its contents. Thus, Plaintiff's report that he has knowledge that Defendants knew of the grievance is not speculative but is based upon a reasonable conclusion drawn by him based upon the information known to him. Therefore, the objection is recommended to be **OVERRULED.**

///

## IV. CONCLUSION

Thus, for all the reasons set forth above, it is **HEREBY RECOMMENDED**,

1. Defendants' December 1, 2010 motion for summary judgment (Doc. 33) be **DENIED**;
2. Defendants' January 21, 2011 objections to Plaintiff's declaration (Doc. 37) be **GRANTED IN PART** and **DENIED IN PART**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 31, 2011**                              /s/ Jennifer L. Thurston
                                                        UNITED STATES MAGISTRATE JUDGE